## In re PIERCE.
### Patent Appeal No. 3144.

Court of Customs and Patent Appeals.
June 5, 1933.

David Rines, of Boston, Mass., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner, denying all of appellant's claims, 10 in number, of which claims 30, 36, 44, and 46 are regarded as illustrative by the appellant, and will be so regarded by us. They follow:

"30. An electric system having, in combination, a coil adapted to be traversed by alternating currents, a magnetostrictive body in magnetizable relation to said coil, said magnetostrictive body having a natural frequency of vibration synchronous with a frequency of said alternating current, a resistance-changing element positioned to be mechanically operated by vibrations of said body, and an electric circuit through said resistance-changing element.

"36. An electric system having, in combination, a source of electromotive force, an electric circuit for the flow of alternating current connected with the source and having

a winding, a magnetostrictive vibrator disposed in the winding and attuned to the frequency of the said electromotive force, whereby the vibrator freely vibrates mechanically by magnetostriction when stimulated by the electromagnetic field of the winding, and a microphone the electrical conduction of which is varied in accordance with the magnetostrictive deformations of the vibrator.

"44. A telephone system having, in combination, an electric circuit, means for supplying speech-controlled current to the circuit, a vibrator connected with the circuit and attuned to the frequency of the speech-controlled current so as to be excited by reversible internal stresses set up in the body by the speech-controlled current, a microphone, an electric circuit in which the microphone is connected, and a telephone responsive to the variations in the electrical conditions of the circuit.

"46. A receiving system having, in combination, a circuit, a coil traversed by currents flowing in the circuit, a magnetostrictive core in the coil and tuned to the frequency of said currents, a resistance-changing element positioned to be mechanically operated by vibrations of the core, an electric circuit through the said resistance-changing element, whereby the electrical conduction of the circuit is varied in accordance with the magnetostrictive deformations of the core, and a telephone responsive to the variations in the electrical conditions of the second-named circuit."

The references used by the Examiner were: Wiegand, 436,514, September 16, 1890; Warth, 1,022,519, April 9, 1912; Kinsley, 1,488,789, April 1, 1924.

The Board used the same references, but also referred to a patent to Hall, 1,378,345, dated May 17, 1921, which was referred to in the reference Kinsley, and to which further reference will be made hereinafter.

Concerning the nature of the invention, the Board said: "The claims are directed to a magnetostrictive device or vibrator for transmitting and receiving purposes in telephony and telegraphy. The device comprises a magnetostrictive core or small rod surrounded by a coil adapted to be traversed by alternating currents which will produce slight extensions and contractions of the core. These changes in the length of the magnetostrictive rod are utilized to actuate a microphone shown in most of the views at the end or ends of the rod. * * *"

The Board held that it was not new to attach a microphone to a magnetostrictive rod, and that the particular departure from the

prior art in the instant application resides in making the natural frequency of the core substantially the same as or resonant to the frequencies set up in the surrounding coil. The Board pointed out that in the patents to Wiegand and Warth, it was an old expedient to employ a magnetostrictive rod in a coil subjected to alternating current, and utilize the consequent extensions and contractions of the rod to actuate a microphone. The Board pointed out that these two patentees did not state that they availed themselves of the advantages resulting from the adoption of magnetostrictive rods whose natural frequency was resonant to the frequencies of the alternating currents. The Board said: " * * * The patent to Kinsley discloses, however, that it was not new when the applicant filed his application to obtain the advantages resulting from using a magnetostrictive rod whose natural period corresponded with or was resonant to either the frequency or an overtone of the alternating current frequency. Kinsley employed a different resistance varying device from that adopted by the applicant. The patentee used the hot-wire resistance varying coil indicated at 10 and by the lengthening and shortening of the magnetostrictive rod controlled the play of a cooling jet of air upon the heated coil to vary its resistance. The examiner has held this resistance varying arrangement of Kinsley was but the equivalent of the microphone disclosed by Warth or Wiegand and that to substitute in Kinsley the microphone or to substitute in Wiegand or Warth the resonant magnetostrictive rod would result in producing the device applicant claims and that this was an obvious and non-inventive change to make."

The applicant presented his own and other affidavits in an effort to show that the change resulting from the combination was not obvious, and to show that an unexpected and highly useful result was obtained. It is not denied by either the Examiner or the board that better results can be obtained from the use of appellant's device than could be obtained by the use of any of the patents of reference. Both tribunals of the Patent Office concurred, however, in holding that the production of appellant's device called for nothing more than the exercise of mechanical skill in view of what was shown in the three references.

In discussing the effect of the affidavits filed and the view expressed therein that the microphone is very much more sensitive than the arrangment disclosed by Kinsley, the Board said: " * * * It should be noted in this connection that the resistance varying

device disclosed by Kinsley is that shown in the patent to Hall 1,378,345, referred to by Kinsley in his specification, and that in connection with it Hall states on page 2, lines 5 to 9 of his patent, that 'radiation losses being constant, enormous variations in temperature are attainable by the alternate application and withdrawal of the cooling blast from the jet.' It is evident therefore that with the resistance varying device disclosed by Kinsley very large current variations would obtain."

After the Board had decided the case, the appellant moved for a rehearing and submitted several affidavits, by experts, as to the operation of the devices in the references, as well as to the device in the Hall patent referred to in the decision of the Board. In the motion he contended that the Board misunderstood the Hall patent. The Board in ruling on and denying the motion for reconsideration said:

"The patent to Hall is regarded by us as of record in the application since it is referred to in the specification of the Kinsley patent. We do not regard our decision as having set forth any new references or any new reasons over those relied upon by the examiner in his decision. A careful review of the motion discloses that the applicant seeks a reargument of the very points we fully considered in our decision. Before rendering that decision we remanded the case to the examiner for a consideration of affidavits which were not before him when he finally denied the claims. In our decision, following the supplemental decision of the examiner in connection with the affidavits, we affirmed the examiner's holding upon just the grounds on which he based his conclusion. We are fully satisfied that it was so well known vastly increased sensitiveness in the vibratory body would be obtained by making it or that which actuated it resonant to the frequency of the current which produced the actuation that there was nothing inventive or unobvious in adopting this old feature in connection with the device of Warth or Wiegand. If there could be any doubt as to this it is certainly removed by the suggestion of Kinsley that the magnetostrictive rod may be tuned or have a period related to the frequency. Neither the examiner nor this Board denies that the applicant may obtain largely increased variations by tuning but it has been held this was but an expected result based on a knowledge of the advantage of tuning any vibratory element of this general character to the frequency of the current employed.

"We do not regard it as of advantage to have a reargument or rehearing of the matters which we have already fully considered. If we are in error it is an error of judgment, and this is a matter for review by an appellate tribunal."

In appealing to this court from the decision of the Board, appellant, in his reasons of appeal, challenges the propriety of the introduction of the Hall patent into the record without affording him an opportunity to explain its limitations, and claims he should have been granted a reconsideration under the provisions of rule 139. Said rule 139 provides in part that the applicant may waive the right to a further prosecution before the Primary Examiner and have the case reconsidered by the Board of Appeals on the same record. Notwithstanding the fact that the Board gave consideration to the new affidavits and arguments of appellant relating to the Hall reference, it is contended that appellant has had no reconsideration within the meaning of the patent rules. See McCrady's Patent Office Practice, § 256.

If it were held that the Board's reference to Hall, although Hall was referred to in the reference Kinsley, was the introduction of a new reference or a new ground of rejection, and if it were also held that the Board's rejection of the claims on the three references of record was erroneous, appellant's reasons of appeal and argument on this phase of the case would warrant very careful consideration, and a definite ruling thereon. However, as we view it, the decision of the Board to the effect that there is nothing inventive in appellant's application over what is shown in Wiegand, Warth, and Kinsley is sound, and, therefore, its decision should be affirmed.

The Board's attitude toward the references Wiegand, Warth, and Kinsley has been referred to above, and detailed explanation of these three patents, in our judgment, is not required here. It is sufficient to say that the patent to Wiegand relates to a telephone relay for use in telephony or other signaling, and discloses conductors for leading incoming currents to the coil within which is a magnetizable metal core, expansible lengthwise under the influence of the electric current through the coil. The core is connected by a rod to move the electrodes with respect to each other, and so vary the current in the second circuit.

The appellant in his brief, in discussing Kinsley, said:

"The Kinsley patent will be discussed first because, though it is not relied upon by the Board as anticipating the appellant's invention, it is really much nearer to a solution of the appellant's problem of providing a supersonic detector or demodulator than either the Warth patent or the Wiegand patent.

"The Kinsley patent discloses a resonant, magnetostrictively operating core 1 (Rec., p. 67), to the free end of which is attached a conical tip 7 for controlling a cooling air jet 8. There is no microphone (for Kinsley, unlike the appellant, had not discovered that a microphone *could* be operated at the high, supersonic, resonant frequency of the magnetostrictive core)—there is merely the air jet, which plays upon a heated resistance wire 10, to cool it. The vibration of the core 1 theoretically results in varying the cooling effect produced by this air jet on the heated resistance wire 10, thus theoretically varying the resistance of the wire 10. This, in turn, theoretically effects variations in the current traversing the circuit 10, 11, 12; and these variations are supposed to be detected in a meter 12." [Italics quoted.]

Also, the appellant makes the following statement as to his invention: "The invention resides, from the sub-combination point of view, as required, for example, by claims 30 and 36, in operating a *microphone* at the high, supersonic, resonant frequencies of the magnetostrictive core—which no one had heretofore considered possible; and from the complete-combination point of view, as indicated by the twelfth assignment, in the production of a new, supersonic detector or demodulator, as specified, for example, in claims 44 and 46." [Italics quoted.]

With reference to the Warth and Wiegand patents the appellant states as follows: "The Warth and Wiegand patents are alike, and may be treated together. * * * They are each concerned with a microphone-attached magnetostrictive core, but operated as a telephone *repeater* or reproducer of speech currents, at *speech frequencies* (Rec., p. 57, ls. 10 to 14). In Fig. 3 (Rec., p. 54) of the Warth patent, for example, a microphone T is attached to the end of a magnetostrictive core C disposed in an exciting coil H." [Italics quoted.]

The Board, after referring to and considering the Kinsley patent, said: "We are of the view, as it is so common and well known that if the natural vibratory period of a reed, diaphragm, piezoelectric crystal, magnetostrictive rod, etc. is made resonant to or to correspond with that of the carrier current changes a vastly increased sensitiveness in the vibratory body will be obtained, that there was nothing unobvious or inventive in adopting this feature in connection with the Warth or Wiegand device. We think, as the examiner held, that persons skilled in these matters would know beforehand that if the vibratory body had a natural period to which the carrier current changes were resonant there would be a very large increase in the vibrations of the body. Even if, in a device of the character disclosed by Warth or Wiegand, it be held there was wanting a suggestion that the magnetostrictive rod could be given the natural period of the current alternations, the patent to Kinsley supplied the suggestion."

We concur in the conclusion of the Board that there is nothing unobvious or inventive in appellant's combination over that which is disclosed by the three references of record. What is or is not obvious to the skilled mechanic is, as we have frequently said, a question of opinion. It is, however, a question of fact, relating to a highly technical subject-matter which has been passed upon with concurring results by both tribunals of the Patent Office, and, under such circumstances, this court will not reverse the decision of the Board unless it is clear that its decision is erroneous. In re Demarest, 38 F.(2d) 895, 17 C. C. P. A. 904; In re Wietzel, 39 F.(2d) 669, 17 C. C. P. A. 1079; In re McDonald, 47 F.(2d) 802, 18 C. C. P. A. 1099.

The decision of the Board of Appeals is affirmed.

Affirmed.